**METROPOLITAN INTERNATIONAL, INC.; Intermetro Industries Corp. and Richard Maslow, et al., Plaintiffs,**

**v.**

**ALCO STANDARD CORPORATION; Alco Foodservice Equipment Company; Ray B. Mundt and Thomas J. McCann, Jr., Defendants.**

Civ. No. 85–1406.

United States District Court, M.D. Pennsylvania.

May 15, 1986.

Perry J. Shertz, John G. Whelley, Jr., Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., for plaintiffs.

Charles A. Shea, III, Shea, Shea & Caputo, Wilkes Barre, Pa., Howard D. Scher,

Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiffs filed this action pursuant to 28 U.S.C. § 1331 on September 24, 1985 asserting that defendants wrongfully terminated an agreement between the parties whereby Defendant Alco Standard was to purchase all of Metropolitan's stock. Plaintiffs allege violations of the federal securities laws, 15 U.S.C. §§ 78j, 77q(a), the Racketeer Influenced and Corrupt Organizations Act [RICO] and various state law claims of breach of contract and fraud. Defendants filed a Motion to Dismiss and a brief in support thereof on November 15, 1985 and November 25, 1985, respectively. Plaintiffs opposed the motion by brief filed December 2, 1985 to which defendants replied December 31, 1985. Defendants also filed a Motion to Stay which has been fully briefed. *See* Documents 9, 10, 18 & 22 of the Record. The motions are now ripe for disposition. For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part. The Motion to Stay will be denied.

### I. FACTS

Plaintiffs, Metropolitan International, Inc., Intermetro Industries Corporation and their respective shareholders [Metropolitan], filed this action against Defendants Alco Standard Corporation, Alco Foodservice Equipment Company [Alco], Ray B. Bundt, President of Alco, and Thomas J. McCann, Jr., Vice-President of Acquisitions of Alco. Plaintiffs contend basically that Alco wrongfully "walked-away" from a merger agreement entered into by Metropolitan and Alco.

Plaintiffs allege that in March, 1985, Alco approached Metropolitan with the intent of acquiring Metropolitan. After two meetings, defendants made a substantial offer to purchase all of Metropolitan stock in exchange for Alco stock. After negotiations, the parties entered into an Agreement Plan [Agreement] on June 28, 1985, which included the purchase of 100% of Metropolitan's stock in exchange for Alco stock. A specific date was not set for consummation of the exchange. Additionally, the Agreement called for a "due diligence" review of Metropolitan's operation. If the "due diligence" review revealed Metropolitan's financial condition was adversely different from that represented by Metropolitan management, then the Agreement provided that Alco could "walk-away" from the Agreement without liability. Specifically, the "walk-away" clause provided:

> *(f) Alco's right to terminate.* Alco shall have the right to terminate this Agreement, without liability, prior to the Closing, upon written notice to the Company, that, as a result of the "due diligence" review of the Company and its subsidiaries, the business or financial condition of the [C]ompany taken as a whole materially adversely differs from the representations made to Messrs. McCann, Mundt, Shelley or Veale by Richard Maslow at or prior to the execution of this Agreement concerning the plant, equipment and business operations of the Company taken as a whole, but excluding matters relating to the industry or the trends in the industry in which the Company is engaged.

Plan and Agreement of Reorganization, Document 20 of the Record, Appendix C at ¶ 2(f) [hereinafter Agreement]. Plaintiffs allege that they objected to the "walk-away clause" but acquiesced after Alco assured them that its inclusion only reflected Alco's concerns with respect to the physical condition of the plants and equipment and compliance with environmental laws. In any event, Alco conducted its due diligence review and, on July 25, 1985, informed Metropolitan that it would not proceed with the transaction based upon financial reasons discovered during the review which adversely affected the price agreed upon. Alco suggested either a termination of the Agreement or a renegotiated price reflecting the fiscal information revealed during the review. Metropolitan refused and by formal letter dated August 14, 1985, Alco gave detailed written notice that it was terminating the Agreement due to Metro-

politan's adverse misrepresentations. This action ensued.

## II. DISCUSSION

Alco has moved to dismiss arguing that plaintiffs have failed to state a cause of action under Section 10(b) and Rule 10b–5 of the federal securities laws inasmuch as plaintiffs are not purchasers or sellers of securities or, alternatively, there is no causal relationship between the alleged fraud and the sale of securities. Defendants also contend that there is no implied cause of action pursuant to § 17(a) of the 1933 Securities Act. Additionally, defendants maintain that plaintiffs have failed to satisfy the "pattern of racketeering activity" requirement under plaintiffs' RICO claim. Finally, defendants argue that this court should not exercise pendent jurisdiction over the remaining state law claims. Each argument will be addressed *seriatim.*

### A. Section 10(b) Claim

#### 1. Purchaser-Seller Requirement

■ Defendants contend that plaintiffs have failed to state a claim under section 10(b)[1] and Rule 10b–5 of the Securities Exchange Act of 1934[2] because they were not actual purchasers or sellers of securities within the meaning of the Act. As a result, defendants argue that plaintiffs have no standing. The court does not agree.

In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court held

that a private cause of action for money damages under section 10(b) can be maintained only by a purchaser or seller of the stock in question. Our Court of Appeals has held that the sale of all or part of a business effectuated by a transfer of stock is a sale of a security under the federal securities acts. *Ruefenacht v. O'Halloran,* 737 F.2d 320 (3d Cir.1984) *aff'd sub. nom. Gould v. Ruefenacht,* 471 U.S. 701, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985). Thus, the issue presented here is whether plaintiffs are purchasers or sellers of a security having executed a contract that is later terminated before consummation of the transfer.

Under the definitional section of the securities acts, "purchase" includes a contract to buy, and "sell" includes a contract to sell. 15 U.S.C. § 78c(a)(13) & (14). The Agreement, signed by the parties, provides a contractual right to purchase Alco stock and sell Metropolitan stock. While this contractual right is conditioned upon, *inter alia,* the "due diligence" review, it is sufficiently definite for plaintiffs to maintain that they are purchasers or sellers for the purposes of section 10(b). *See Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555 (2d Cir.1985) (contract for transfer of security may qualify as a sale under securities laws even if contract is never fully performed); *See also Abrams v. Oppenheimer Government Securities, Inc.,* 737 F.2d 582 (7th Cir.1984) (contract to purchase and sell constitutes purchase or sale of securities for purposes of securities laws).

1. Section 10(b) provides:
   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
   15 U.S.C. § 78j(b).

2. Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange
(a) to employ any device, scheme, or artifice to defraud,
(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, nor misleading, or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5 (1984).

## 2. "Causal Connection" Requirement

Even if plaintiffs are purchasers or sellers, however, defendants contend that there is no causal connection between the purchase or sale of any security and the alleged fraud. According to defendants, plaintiffs have not alleged any fraud in connection with the sale of any security. Plaintiffs counter that a review of the complaint demonstrates that it is replete with allegations of fraud which satisfy the "in connection with" requirement.

Our Court of Appeals has stated that the "in connection" requirement must be read broadly, *Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939, 943 (3d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985), although some causal connection must be established between the alleged fraud and the purchase or sale of stock. Defendants place great reliance upon *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194 (3d Cir.1976).

> In the instant case, however, the requisite causal connection is lacking. The fraud which plaintiffs have alleged lies not in the actual sale of stock to them, but rather in the refusal to sell ... in accordance with the ... [A]greement.... The allegations are based, not on injuries suffered as a result of plaintiffs' actual stock purchase, but rather on injuries caused by [defendants'] refusal to sell to plaintiffs [and defendants' decision to walk away.] The gravamen of their complaint, therefore, is that they were "deprived" purchasers.

*Tully, supra* at *id.* While defendants' argument has superficial appeal, a closer comparison of *Tully* to the facts presented in the instant case reveals that *Tully* is not controlling. In *Tully*, plaintiffs were frustrated Class A shareholders who believed under an agreement that they had a right of first refusal of certain treasury stock. A board resolution of the plaintiffs' corporation purported to offer the stock to all shareholders on an equal basis. The Class A shareholders then brought the *Tully* action against the directors who voted in favor of the board resolution, seeking to rescind the sale of the treasury stock and

requiring a resale to plaintiffs. The factual allegations presented in the instant case are distinguishable. A fair reading of the complaint demonstrates that plaintiffs are alleging that the whole agreement between Metropolitan and Alco was a fraud. They contend that defendants entered into negotiations:

> for the purposes of (1) having access to the books and records of the company through a due diligence review and to provide themselves with an opportunity to walk away from the transaction with that information, and (2) intentionally injuring Plaintiffs by inducing Plaintiffs to publicly disclose the merger at substantial risk so that at a later date Defendants might induce Plaintiffs to settle for a lesser amount in order to avoid the embarrassment and loss of corporate value which would result from a walk away, and (3) to extort a lesser price than the price Defendants originally offered to pay, by first entering into an agreement and thereafter threatening to terminate the Agreement through the issuance of a "draft" termination letter.

Complaint, Document 1 of the Record at 11, ¶ 50.

In other words, plaintiffs were lured into a deal with defendants who, in turn, had no intention of closing the transaction. Their fraudulent intent, instead, was to delve into Metropolitan's corporate books, perform a "due diligence" review with the intention of walking away by arguing that plaintiffs misrepresented the financial status of the corporation—all for the purpose of forcing a decrease in plaintiff's price of stock under the agreement. It is far from clear, at this stage of the litigation, that the sale of Metropolitan stock and purchase of Alco stock is not connected with the alleged fraud of defendants. Unlike the plaintiffs in *Tully*, the gravamen of plaintiffs' complaint here is not just that they are "deprived" purchasers; rather, they were fraudulently induced into the agreement and sale of the securities. This sale or purchase of securities is not incidental to the alleged fraud which relates not only to motive and intent for entering the Agreement but also to defendants' attempt to

dilute the value of plaintiffs' stock. *Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482, 1495 (D.Del.1984) is not to the contrary. There, the court stated: "This court, and many others, have consistently rejected claims under the securities laws where a party's injuries have resulted not from alleged misrepresentations relating to acts of misconduct, but rather, from the alleged misconduct itself." Here, plaintiffs are contending they have been injured by the fraudulent misrepresentations of defendants in convincing plaintiffs to enter into an agreement.

It is important to note that plaintiffs allege fraud in connection with both the *negotiations* and defendants' *intentions* in entering into the Agreement. As a result of this misconduct and misrepresentation, plaintiffs contend they suffered a loss of the sale of their stock, as well as plaintiffs' disclosure of confidential information regarding the operation of Metropolitan's business, and defendants' attempt to dilute the value of stock and acquire it at a lower price. The court is not prepared to hold as a matter of law that plaintiffs can prove no set of facts which would entitle them to relief. As a result, the court finds that plaintiffs have established a causal connection sufficient to survive a Motion to Dismiss.

**B. Private Cause of Action Under § 17(a)**

■ Defendants contend that plaintiffs cannot bring an action pursuant to § 17(a) of the securities laws, 15 U.S.C. § 77q(a), because there is no private right of action under section 17(a). In support they cite, *inter alia,* Judge Giles' decision in *Kimmel v. Peterson*, 565 F.Supp. 476 (E.D.Pa.1983) in which an implied private cause of action under section 17(a) was specifically rejected. Plaintiffs counter by maintaining that while neither our Court of Appeals nor the Supreme Court has ruled on the issue, the majority of circuits do imply such a cause of action. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Document 20 of the Record at 31. After careful review and consideration, this court joins those courts holding that there is no private cause of action under Section 17(a). *Kimmel v. Peterson*, 565 F.Supp. 476 (E.D.Pa.1983).

Section 17(a), an anti-fraud provision of the Securities Act of 1933, provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q (1976).

In *Kimmel*, Judge Giles, in a well-reasoned opinion, explored the historical background and legislative history of section 17(a). While noting that the numerical weight of authority of case law was in favor of implying a private cause of action, Judge Giles noted that those opinions had done so with very little discussion or analysis. *Kimmel, supra* at 482–83. In contrast, those courts holding no private cause of action under section 17(a) exists, have carefully analyzed the four-prong test enunciated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The *Cort* test is to be employed to determine whether Congress intended to imply a private cause of action.

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted, that is, does the statute create a federal right in favor of plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And

finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the State, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*Cort, supra* at 78, 95 S.Ct. at 2088 (emphasis in original) (citations omitted). Later, in *Touche-Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the court explained that all four factors should not be weighted equally; rather, the first three were more relevant to any determination because those factors concentrated upon Congressional intent.

In this case, since section 17(a) was enacted to prevent fraud, thus protecting potential victims, *Kimmel, supra* at 486, plaintiffs here are members of the class "for whose especial benefit the statute was enacted." This determination, however, does not end the inquiry.

This court agrees with Judge Giles that the second and third prong of the test have not been met.

[T]he existence of express remedies within the same statute [*i.e.,* sections 11 and 12] militates against a finding of Congressional intent to imply further remedies.... This is especially true here, as section 17(a) is sufficiently broad to cover virtually all activities addressed by sections 11 and 12. As mentioned earlier, however, section 17(a) does not have the internal restrictions and defenses found in sections 11 and 12. Thus, if a private right of action were to be implied under section 17(a), it would become the preferable remedy, rendering sections 11 and 12 entirely superfluous. The complex scheme which Congress wove in the express civil liabilities sections would be totally undermined.

*Kimmel, supra* at 487. Thus, "[had] Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Id.* at 488 (quoting *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 21, 100 S.Ct. 242, 248, 62 L.Ed.2d 146 (1979)).

Nor is the third prong of *Cort* met, which requires consistency with the underlying purposes of the statutory

scheme. In *Piper v. Chris-Craft Industries,* 430 U.S. 1 [97 S.Ct. 926, 51 L.Ed.2d 124] (1977), the Court phrased the inquiry in terms of whether the legislative purposes "are likely to be undermined absent private enforcement" or whether it "is necessary to effectuate Congress' goals." ... Measured against any of those standards, an asserted private right of action under section 17(a) fails. Rendering sections 11 and 12 effectively impotent is neither necessary to, nor consistent with, the legislative purposes of the 1933 Act.

*Kimmel, supra* at 488. *Accord Binkley v. Sheaffer,* 609 F.Supp. 601, 602–603 (E.D. Pa.1985) (Judge Troutman following Judge Giles' opinion in *Kimmel, supra*). Inasmuch as the factors weighing Congressional intent militate against implying a private cause of action, it is unnecessary to analyze the fourth *Cort* prong.

In light of the above, the court concludes that it would be inappropriate to imply a cause of action under section 17(a). In this conclusion, the court is not alone. *See e.g., Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982); *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152 (8th Cir.1977) *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Binkley v. Sheaffer,* 609 F.Supp. 601 (E.D.Pa.1985); *Bedford v. Lockhart-Bright Associates* No. 82–5574, slip op. (E.D.Pa., Nov. 1, 1985) (Broderick, J.) [Available on WESTLAW DCTU database]; *In Re Catanella and E.F. Hutton and Co.,* 583 F.Supp. 1388 (E.D.Pa.1984); *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983); *Hudson v. Capital Management Intern., Inc.,* 565 F.Supp. 615 (N.D.Cal.1983); *Massaro v. Vernitron Corp.,* 559 F.Supp. 1068 (D.Mass.1983); *Basile v. Merrill Lynch, Pierce, Fenner & Smith,* 551 F.Supp. 580 (S.D.Ohio 1982); *Hill v. DER,* 521 F.Supp. 1370 (D.Del.1981).

**C. RICO Claims**

■ As a final challenge to plaintiffs' federal claims, defendants argue that plaintiffs have failed to state a claim under RICO because a "pattern of racketeering" has not been established. *See* 18 U.S.C.

§ 1961(5). A pattern of racketeering activity is defined as the commitment of two or more predicate racketeering acts within a ten-year period. *Id.* The court is satisfied that plaintiffs have stated a claim under RICO.

RICO was passed by Congress in an effort to "root out 'the infiltration of legitimate business by organized crime.'" *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482, 1497 (D.Del.1984) (quoting *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532–33, 69 L.Ed.2d 246 (1981)). To facilitate and strengthen enforcement, a private right of action for treble damages was established to anyone injured by a RICO violation. 18 U.S.C. § 1964(c).

The broad scope of RICO, however, together with the provision of private rights of action under the Act, have created the risk of abusive private enforcement of the Act. Most any "garden variety" fraud claim can be creatively converted into at least a facially viable RICO claim. The simple filing of a RICO claim against a party can have a tremendous "in terrorem" effect and produce significant injury to the party's reputation as a result of the racketeering charges.

*Warner Communications, supra* at 1497.

While the court is sympathetic to the *Warner Communications* court's observations, it is for Congress and not this court to limit the use to which RICO has been put. *See Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Here, plaintiffs have alleged mail and wire fraud on the part of defendants in order to secure confidential information of plaintiffs' business.[3]

Although it is true that "two isolated acts of racketeering activity do not constitute a pattern, ... when two acts which relate *to each other* and arise out of the same scheme are alleged, the requirement of pleading a "pattern of racketeering activity" has been met." *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1170 (S.D.N.Y.1985) (emphasis in original) (citations omitted). *See also R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985) (rejecting argument that two related acts of mail fraud were not sufficient to constitute a pattern of racketeering activity). In the case *sub judice,* plaintiffs have alleged a number of mail and wire fraud violations in furtherance of the alleged scheme to obtain the confidential information. At this point of the litigation, it is premature to hold as a matter of law that plaintiffs can prove no set of facts which would bear out plaintiffs' theory. As a result, defendants' Motion to Dismiss will be denied on this issue.

D. Pendent Jurisdiction

Plaintiffs' remaining claims, arising out of a common nucleus of operative facts, are those arising under state law. Inasmuch as the court has retained jurisdiction over the federal RICO issue, it does not appear at this point that an exercise of pendent jurisdiction over the state law claims would be unjustified. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966). Defendants argue, however, that plaintiffs' complaint fails to plead the circumstances of the alleged fraud with particularity as required under Fed.R.Civ.P. 9(b). This argument will be

---

**3.** The RICO claim arises from the same set of facts as that upon which plaintiffs' securities law claims are based. "The racketeering acts charged against defendants consist of their alleged § 10(b) ... violations. Plaintiffs may have been relying upon the alleged securities fraud. Without a valid claim of securities fraud, however, there are no predicate acts of racketeering to support a RICO cause of action." *Nutis v. Penn Merchandising Corp.,* 610 F.Supp. 1573, 1583 (E.D.Pa.1985) (footnote and citations omitted); *accord Warner Communications, supra,* at 1499 (after securities claim dismissed, RICO claim dismissed even though complaint

additionally alleged racketeering activity consisted of mail and wire fraud as well as fraud under securities laws); *see also In Re Catanella,* 583 F.Supp. 1388, 1425 (E.D.Pa.1984) ("Causation is an element of a Section 10(b) cause of action. If there is no loss causation, plaintiffs will not have stated a valid securities fraud claim. Without a valid securities fraud cause of action, that claim cannot serve as a predicate offense under RICO"). Presumably, plaintiffs are relying upon the mail and wire fraud violations as the predicate acts to support the RICO claim.

rejected. In *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), our Court of Appeals held that dismissing a cause of action of fraud for failure to describe date, time or place of phone calls or letters was "too strict a scrutiny."

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Id.* at 791. As in *Seville,* plaintiffs here set forth the nature of the misrepresentations and adequately describe the nature and subject of the alleged misrepresentations. Plaintiffs have alleged facts with sufficient particularity to at least survive a motion to dismiss. Consequently, defendants' Motion will be denied on this issue.

E. Motion to Stay

■ Defendants also maintain that this action should be stayed because there are two pending state actions regarding this dispute. It appears that Alco filed an action in the Chester County Court of Common Pleas on September 4, 1985 before Metropolitan filed the instant action on September 24, 1985. Apparently, Metropolitan also filed an action in Luzerne County Court of Common Pleas on September 23, 1985. Defendants urge the court to stay the federal action inasmuch as the same set of facts, dispute and parties are involved in both the state and federal actions. A stay would not be appropriate, however, under the present record.

In *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 14–16, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983), the Supreme Court set forth factors that a district court should consider with reference to a stay. In citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the *Moses Cone* court cautioned that " 'the pendency of an action in the state court is no bar to proceeding concerning the same matter in the Federal court having jurisdiction,' and that the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.' " *Id.* at 15, 103 S.Ct. at 936 (footnote omitted). Factors which are relevant are inconvenience of the federal forum, desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the forums. The Supreme Court noted only the clearest of justifications warrant dismissal or granting of a stay. *See id.* at 16, 19, 103 S.Ct. at 937, 938–39.

■ The court does not agree with defendants that all factors counsel toward granting the stay. The order in which the forums obtained jurisdiction is of little consequence inasmuch as the actions were filed within twenty days of each other. Further, it does not appear that plaintiffs' RICO claim is before the state courts; thus, the actions are not identical. Additionally, there will be piecemeal litigation regardless since there are two state court actions. Finally, it does not appear that the federal forum will impose a greater inconvenience to the parties. A careful review of all the factors and circumstances of this case lead this court to conclude that defendants' Motion to Stay should be denied.

### III. CONCLUSION

In summary, the court finds that plaintiffs have standing to maintain a cause of action pursuant to § 10(b). Plaintiffs' causes of action pursuant to § 17(a) fail inasmuch as the court finds there is no implied cause of action. Plaintiffs have sufficiently alleged facts in order to survive a Motion to Dismiss on the RICO claims. As a result, the court will exercise pendent jurisdiction over the state law claims noting plaintiffs have sufficiently

particularized their allegations as to fraud. Finally, the court concludes that defendants' Motion to Stay this action should be denied.

An appropriate Order will enter.