Thomas E. SHERIDAN, Wanda Sheridan, Thomas E.S. Sheridan, Miriam V. Olsen, Charles L. Hames and Constance Levy, Plaintiffs,

v.

Gilbert WEINBERGER, Robert Romich, Patricia Romich, First Eastern Bank, N.A., First Eastern Corporation, John and/or Jane Doe and Doe Corporation, Defendants.

Civ. No. 87–0955.

United States District Court, M.D. Pennsylvania.

Dec. 2, 1987.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiffs.

Robert C. Heim, Dechert, Price and Rhoads, Philadelphia, Pa., for First Eastern Bank & First Eastern Corp.

Ronald A. Krauss, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., James M.

Howley, Scranton, Pa., for Gilbert Weinberger, Robert Romich, & Patricia Romich.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Presently before the court is a motion of defendants First Eastern Bank, N.A. and First Eastern Corporation to dismiss Count III of plaintiffs' Complaint. For the reasons set forth below, the motion to dismiss will be denied, but plaintiffs will be directed to file an amended pleading.

## BACKGROUND

Plaintiffs were formerly shareholders in the Hawley Bank. At all relevant times, defendant Weinberger was a director of the Hawley Bank. *See* document 11 of the record at 2.[1] The relationship of defendants Robert Romich and Patricia Romich to the Hawley Bank is unclear from the present record, and the relationship between First Eastern Bank and the Hawley Bank will be discussed *infra*.

According to plaintiffs' Complaint, Robert Romich purchased 241 shares of Hawley Bank stock from plaintiff Olsen in February 1985 for $100.00 per share. *See* document 1 at ¶ 17. Weinberger subsequently acquired 4,685 shares of Hawley Bank stock from plaintiffs Thomas E. Sheridan and Wanda Sheridan for $110.00 per share pursuant to a stock purchase agreement dated March 8, 1985. *Id.* at ¶ 18. Weinberger bought an additional 353 shares of Hawley Bank stock from plaintiff Thomas F. S. Sheridan for $110.00 per share pursuant to a stock purchase agreement of the same date. *Id.* at ¶ 20. The Sheridans received full consideration for each transaction on June 6, 1985. *Id.* at ¶¶ 19, 21. Robert Romich and Patricia Romich then purchased 16 shares of Hawley Bank stock

from plaintiff Hames and 10 shares from plaintiff Levy on June 28, 1985 for $85.00 per share. *Id.* at ¶¶ 22, 23. All of the above stock transactions purportedly involved illegal use of wires and/or mail by defendants. *Id.* at ¶¶ 40, 41.

In June 1985, Weinberger allegedly borrowed $700,000.00 from First Eastern Bank, N.A. on an unsecured basis. *See* document 1 at ¶ 24. Plaintiffs aver that "[t]he funds were used to purchase the Hawley Bank Stock from the named plaintiffs and possibly other Hawley Bank shareholders." *Id.*

On July 12, 1985, the directors of the Hawley Bank announced their approval of a proposal from First Eastern Corporation and First Eastern Bank, N.A. to merge the Hawley Bank into the latter defendant. *See* document 1 at ¶ 25. First Eastern Bank, N.A. agreed to pay $147.00 per share for 40% of the Hawley Bank stock and to transfer 4.05 shares of First Eastern Corporation stock, valued at $39.00 per share as of July 12, 1985, for each of the remaining shares of Hawley Bank stock. *Id.* at ¶ 26(b).

Plaintiffs instituted this action on July 10, 1987. They claim that during the course of the stock transactions noted above, Weinberger and the Romiches failed to disclose material information, made misrepresentations and attempted to conceal their fraudulent conduct. Although plaintiffs do not specifically aver that Weinberger and the Romiches were aware of the pending merger at the time of the stock transactions, such understanding on the part of these defendants is central to plaintiffs' Complaint. Count I alleges violations of Section 10(b) and Rule 10b–5; Count II states a claim under the Pennsylvania Securities Act of 1972; Count III asserts vio-

---

**1.** According to plaintiffs' brief in opposition to defendants' motion to dismiss, there was a history of antagonism between some of the parties prior to the events which triggered this lawsuit. Plaintiffs explain:

Plaintiff, Thomas E. Sheridan had been an officer, director and major shareholder of the Hawley Bank for many years. In 1984 he was ousted from his position of president by The Hawley Bank directors, led by defendant

Gilbert Weinberger. Gilbert Weinberger had advocated the merger of The Hawley Bank since 1982, when, after purchasing some stock, he first became active in The Hawley Bank's affairs. Prior to Mr. Sheridan's ouster, Mr. Sheridan had strongly opposed any suggestions that The Hawley Bank merge and had been successful in opposing Gilbert Weinberger's views.

*See* document 11 at 2.

lations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S. C. § 1961 *et seq.;* Count IV avers common law fraud; and Count V charges that defendants engaged in common law conspiracy. Plaintiffs attempt to hold First Eastern Bank, N.A. and First Eastern Corporation jointly liable with the other defendants under each of the above causes of action as aiders and abettors of their codefendants. Specifically, plaintiffs maintain that "as aiders and abettors of securities fraud, [the bank defendants] are equally responsible for the ... acts committed by the individual defendants." *See* document 14 at 5. *See also Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1356 (3d Cir.1987) ("an aider and abettor of two predicate acts can be civilly liable under RICO").

First Eastern Bank, N.A. and First Eastern Bank Corporation submitted a Motion to Dismiss Count III of the Complaint on August 31, 1987. These defendants argue that plaintiffs did not properly allege a "pattern" of racketeering activity for RICO purposes, failed to adequately aver the "enterprise" element and did not plead fraud with the requisite particularity. *See* document 9 at 2.

The parties have briefed the relevant issues, and the pending Motion to Dismiss Count III is now ripe for consideration.

## STANDARD OF REVIEW

In examining a motion to dismiss, a district court should confine its inquiry to the pleadings and should liberally construe the complaint in favor of the plaintiffs. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hooten v. Pennsylvania College of Optometry,* 601 F.Supp. 1151 (E.D.Pa.1984). The material allegations of the complaint should be regarded as admitted, and the complaint, or a portion thereof, should not be dismissed unless it appears that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *See Conley v. Gibson, supra; District Council 47 v. Bradley,* 795 F.2d 310 (3d Cir.1986).

## DISCUSSION

### I.

The pertinent RICO provision, 18 U.S.C. § 1961(5), states, "[A] 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." The United States Supreme Court has cautioned that "two isolated acts of racketeering activity do not constitute a pattern" and that the factor of "continuity plus relationship" is a necessary ingredient in the formation of a pattern for RICO purposes. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

The moving defendants maintain that "a 'pattern' requires more than one scheme to defraud" and that "plaintiffs have failed to allege, as a predicate for a 'pattern,' acts which are sufficiently unconnected in time or substance to be considered separate criminal episodes." *See* document 9 at 4, 7. The moving defendants also argue that regardless of whether or not this court insists upon separate schemes, plaintiffs' allegations do not involve conduct which was sufficiently continuous, *i.e.,* of ample duration, to establish a pattern. *See* document 12 at 6–8.

Federal courts have reached varying conclusions on the question of whether a RICO pattern must involve more than one fraudulent scheme or criminal episode. *Compare Madden v. Gluck,* 815 F.2d 1163 (8th Cir.1987), *International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149 (4th Cir.1987), *Holmberg v. Morrisette,* 800 F.2d 205 (8th Cir.1986), and *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986) (series of predicate acts related to one fraudulent scheme or criminal episode does not constitute a pattern) *with Sun Sav. and Loan Ass'n v. Dierdorff,* 825 F.2d 187 (9th Cir.1987), *Cal Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466 (9th Cir.1987), *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22 (1st Cir. 1987), *United States v. Ianniello,* 808 F.2d

184 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987), *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986), *Bank of America v. Touche Ross & Co.,* 782 F.2d 966 (11th Cir.1986), and *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir. 1985) (series of predicate acts related to one fraudulent scheme or criminal episode can constitute a pattern).

The Court of Appeals for the Third Circuit had on a number of occasions expressly declined to define the parameters of a pattern of racketeering activity. *See Town of Kearney v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263, 1266–68 (3d Cir.1987); *Petro–Tech v. Western Co. of North America, supra,* at 1353–56 (3d Cir. 1987); *United States v. Grayson,* 795 F.2d 278, 290 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987); and *Malley–Duff Associates, Inc. v. Crown Life Co.,* 792 F.2d 341, 353 n. 20 (3d Cir.1986), *aff'd,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Most recently, however, the Third Circuit has ruled that a complaint alleging two or more predicate acts in furtherance of single, not necessarily on-going and open-ended, unlawful scheme may be sufficient to establish a pattern of racketeering activity. *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987).

■ Even prior to the *Barticheck* opinion, it was the established position of the undersigned judge that "two or more related acts which arise out of the same transaction may establish a pattern of racketeering." *Citizens Sav. Ass'n v. Franciscus,* 656 F.Supp. 153, 158 (M.D.Pa.1986) (Nealon, C.J.). *See also A Pocono Country Place v. Peterson,* 675 F.Supp. 968, 974 (M.D.Pa.1987) (Nealon, C.J.); and *Metropolitan Intern., Inc. v. Alco Standard Corp.,* 657 F.Supp. 627, 634 (M.D.Pa.1986) (Nealon, C.J.) ("it is for Congress and not this court to limit the use to which RICO has been put").[2] In light of the precedent established by the *Barticheck, Citizens, Pocono,* and *Metropolitan* opinions, with which the majority of circuit courts addressing the pattern issue are in agreement, the court rejects the moving defendants' contention that "a 'pattern' requires more than one scheme to defraud."

In the *Citizens* decision, this court described the pattern requirement as follows:

[A]ny examination to determine if a pattern exists involves several factors other than the number of criminal transactions present. Indeed, to say that the test for a pattern of racketeering is whether at least two criminal episodes are present is an oversimplistic response to a complex inquiry. This court chooses to follow the middle course outlined in *Morgan v. Bank of Waukegan, supra,* which focuses attention on the interplay between a number of relevant factors, including: the number and variety of the predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.

*Citizens Sav. Ass'n v. Franciscus, supra,* at 158. Similarly, the Third Circuit in *Barticheck* remarked:

[T]he existence of a RICO pattern does not turn on the abstract characterization of racketeering acts as "continuous" and "related" but rather on a combination of factors such as the number of unlawful acts, the length of time over which the acts were committed, the similarity of

---

2. The court finds merit in the following passage from the Seventh Circuit's opinion in *Morgan:*

[T]he proposition that the predicate acts must always occur as part of separate schemes in order to satisfy the continuity aspect of the pattern requirement focuses excessively on continuity, and therefore cannot be accepted as a general rule. Otherwise defendants who commit a large and ongoing scheme, albeit a single scheme, would automatically escape RICO liability for their acts, an untenable result.

*Morgan v. Bank of Waukegan, supra,* at 975. *Accord Barticheck v. Fidelity Union Bank/First National State, supra,* at 39 ("[E]ven assuming one could adequately distinguish among multiple schemes, a rule requiring two or more schemes would exempt from RICO liability defendants who engage in only a single unlawful scheme, however extensive and injurious. Such an outcome is plainly inconsistent with the purposes of the statute.").

the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.

*Barticheck v. Fidelity Union Bank/First National State, supra,* at 38.

In the present case, there were at least five allegedly fraudulent stock transactions involving multiple uses of wires and/or mail. There was apparently one overall scheme through which the six named plaintiffs were purportedly victimized over a period of five months from February 1985 through June 1985. Plaintiffs also point out that discovery may reveal that the scope of the conspiracy was broader than they have alleged. *See* document 11 at 3.

The moving defendants focus upon the continuity aspect of plaintiffs' averments, arguing that even if a single fraudulent scheme may constitute a pattern of racketeering activity, the scheme alleged by plaintiffs is of insufficient duration to establish a pattern. In support of their position, they cite the decision in *Chronister v. Atlantic Richfield Co.,* 653 F.Supp. 1576, 1583 (M.D.Pa.1987) (Caldwell, J.) ("Interpreting the continuity element, we believe that it is essential for plaintiff to show that the predicate acts occurred over a substantial period of time"; conspiracy aimed at one victim and existing from the summer of 1982 through the fall of 1982 was too short in time to satisfy the continuity requirement).

▬ This court declines to fashion a rule espousing a minimal time period over which the predicate acts must have occurred; rather, as noted above, the length of time over which the predicate acts were committed is only one of a number of relevant factors for consideration by the court in examining whether a pattern of racketeering may exist under the particular facts of a given case. *See Barticheck v. Fidelity Union Bank/First National State, supra,* at 40 ("We read the legislative history's reference to 'continuity' as simply calling for an inquiry into the extent of the racketeering activity.... We de-

cline to adopt a verbal formula for determining when unlawful activity is sufficiently extensive to be 'continuous.'"). In fact, this court has previously held that under circumstances presented in a separate case, a complaint alleging mail and wire fraud violations over a period from March 1985 through July 1985 stated a claim under RICO. *See Metropolitan Intern, Inc. v. Alco Standard Corp., supra,* at 634. As the Seventh Circuit stated in *Morgan:*

Requiring both continuity and relationship among the predicate acts for the pattern requirement to be met is a sound theoretical concept that is not easily accomplished in practice. This is because the terms "continuity" and "relationship" are somewhat at odds with one another. Relationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. Continuity, on the other hand, would embrace predicate acts occurring at different points in time or involving different victims. *To focus excessively on either continuity or relationship alone effectively negates the remaining prong* (citation omitted) (emphasis supplied).

*Morgan v. Bank of Waukegan, supra,* at 975.

The court finds that the moving defendants focus excessively on the continuity aspect. Accepting plaintiffs' averments as true for purposes of the Motion to Dismiss Count III, the court is particularly influenced by the fact that defendants' scheme by necessity required them to act within a limited time frame. In short, in order to benefit from their alleged inside information, defendants had to carry out their scheme between the time when they learned of the proposed merger of the Hawley Bank to First Eastern Bank, N.A. and the public announcement of that merger.[3] Defendants' scheme as pleaded involved multiple fraudulent stock transactions, multiple fraudulent uses of wires and

---

**3.** Plaintiffs do not aver when defendants learned of the merger, nor does the record yet  contain any information on this point.

mail and multiple victims. Further, plaintiffs may through discovery discern additional, similar fraudulent activity by defendants, including other fraudulent stock transactions and other victims. Although defendants' supposed scheme was necessarily short in duration, their actions were not the type of "isolated events" which fall outside the ambit of RICO. *See Sedima, S.P.R.L. v. Imrex Co., Inc., supra,* 105 S.Ct. at 3285 n. 14. "To refer to such conduct as a 'pattern' of fraudulent activity certainly comports with the ordinary understanding of the term...." *Barticheck v. Fidelity Union Bank/First National State, supra,* at 39.[4]

The court, then, is unable to conclude at this stage of the litigation that plaintiffs can prove no set of facts establishing that defendants participated in a pattern of racketeering activity for RICO purposes. Therefore, the Motion to Dismiss Count III will be denied on this issue.

## II.

The moving defendants also maintain that plaintiffs do not properly aver the enterprise element in the RICO count. In their Complaint, plaintiffs define the enterprise by stating, "Through the commission of the aforestated fraudulent acts, the [individual] Defendants participated in and maintained and/or controlled an interest in an enterprise or enterprises consisting of themselves, The Hawley Bank, Doe Corporation, First Eastern Corp. and/or First Eastern Bank, N.A., the activities of which

have and will continue to affect interstate commerce." *See* document 1 at ¶ 43.

Plaintiffs did not indicate in their Complaint which subsection or subsections of 18 U.S.C. § 1962 they are proceeding under. They subsequently revealed in their brief in opposition to the motion to dismiss, however, that they are proceeding under §§ 1962(b) and (c) and possibly under §§ 1962(a) and (d) as well. See document 11 at 6. The parties concentrate in their briefs on whether plaintiffs properly defined, for § 1962(c) purposes, the enterprise in paragraph 43 of their Complaint since plaintiffs included defendants in the enterprise.[5]

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(c) "was drafted in such a way that Congress must have intended the 'person' and the 'enterprise' to be distinct entities under that provision." *Petro–Tech, Inc. v. Western Co. of North America, supra,* at 1359 (citing *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628 (3d Cir.1984)). Section 1962(c) is "intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'persons,' and either

---

4. In finding that a pattern of racketeering does not require two separate fraudulent or criminal episodes, the Third Circuit explained:

Although the complaint states only that the defendants committed "two or more" acts of mail fraud in furtherance of their alleged scheme, it may fairly be inferred from the nature of the scheme that defendants engaged in considerably more than two such acts. The scheme was carried out by several individuals and two separate entities.... Most significantly, the scheme involved the repetition of similar misrepresentations to more than twenty investors.... [W]e believe that this conduct falls within the reach of the RICO statute.

*Barticheck v. Fidelity Union Bank/First National State, supra,* at 39.

5. Since the parties have focused on the enterprise for § 1962(c) purposes, the court need not analyze the enterprise element as it pertains to the other subsections of § 1962 or discuss whether defendants may be included in the definition of the enterprise for those other subsections. It is the established law of this circuit, however, that an entity can be both a RICO defendant and the enterprise under § 1962(a). *See Petro–Tech, Inc. v. Western Co. of North America, supra,* at 1360 (quoting *Haroco, Inc. v. American Nat. Bank & Trust Co.,* 747 F.2d 384, 401–02 (7th Cir.1984)); *A Pocono Country Place v. Peterson, supra,* at 974 (§ 1962(a) does not require that the liable person be a separate entity from the enterprise); and *Roche v. E.F. Hutton & Co., Inc.,* 658 F.Supp. 315, 320 (M.D. Pa.1986) (Nealon, C.J.).

drained of its own money or used as a passive tool to extract money from third parties." *Id.* In short, the § 1962(c) enterprise is "the victim ... of the racketeering activity" which "may not be forced to make whole the third parties which were victimized along with or through the enterprise." *Id.*

It is clear that plaintiffs' averment of the enterprise is improper for § 1962(c) purposes inasmuch as plaintiffs include potentially liable "persons," namely the defendants, as part of the enterprise. Plaintiffs argue that paragraph 43 of their Complaint lists the components of the enterprise in the disjunctive, *i.e.*, in the alternative, so that the § 1962(c) "persons" could be excluded from plaintiffs' definition of the enterprise. *See* document 14 at 9. The court finds plaintiffs' argument too elastic. They essentially assert that a plaintiff should be allowed to string entities together in his averment of the 1962(c) enterprise so long as he manages to include the victim of the racketeering activity in his list. This court will not accept this type of a rule of pleading.

Dismissal of Count III, however, would be unduly harsh under these circumstances; rather, the equities of this situation dictate that the court direct plaintiffs to file an amended complaint. Plaintiffs shall specify the subsections of § 1962 under which they are proceeding, preferably setting forth each subsection under a separate count in their amended pleading. Plaintiffs shall also clearly define the enterprise element for each subsection of 1962. *See, e.g., Morgan v. Bank of Waukegan, supra,* at 973 (different enterprises alleged for different subsections of § 1962). In view of the early stage of this litigation, it does not appear that defendants will be prejudiced by permitting plaintiffs to amend their Complaint.

### III.

The moving defendants fault plaintiffs' Complaint for failing to set forth such details as the time and place of the alleged fraudulent acts. Since the court will require plaintiffs to file an amended complaint, it will not address the moving defendants' contention that plaintiffs have failed to plead fraud with the requisite particularity. The court notes, however, that the Third Circuit in its *Petro–Tech* decision recently expressed reluctance to require excessive particularity in RICO pleadings. Specifically, the court stated, "Plaintiffs have alleged the acts involved and the people who committed them. At least at this stage of the case plaintiffs need not attribute each individual act to the individual defendant who committed it." *Petro–Tech, Inc. v. Western Co. of North America, supra,* at 1362. *See also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (in RICO action alleging mail and wire fraud, plaintiffs were not required to aver in their complaint such details as the date, place or time of relevant mailings and telephone calls); and *Chambers Development Co., Inc. v. Browning–Ferris Industries,* 590 F.Supp. 1528, 1538–39 (W.D.Pa.1984) (" 'the draconian result of dismissal' should not be automatic in RICO cases, especially when the facts underlying the claims are within the defendants' control").

An appropriate Order will follow.

### ORDER

NOW, this 2nd day of December, 1987, in accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) The Motion to Dismiss Count III of defendants First Eastern Bank, N.A. and First Eastern Bank Corporation is denied.

(2) Plaintiffs are directed to file an amended complaint within fifteen (15) days of the date of this Order.