**TUNIS BROTHERS COMPANY, INC., Richard N. de la Rigaudiere, and David C. Smith**

v.

**FORD MOTOR COMPANY, Ford Motor Credit Company, Wenner Ford Tractor, Inc., John S. Wenner, John Watson, Douglas N. Crawford, Eugene W. Fraher, E.S. Hasel, Hugh Nikel and Kenneth E. Harris.**

No. 82–5557.

United States District Court, E.D. Pennsylvania.

Oct. 5, 1988.

award of fees.

Arnold R. Ginsburg, Haverford, Pa., for plaintiffs.

Robert Heim, Jeffrey Weil, Steven T. Stern, Philadelphia, Pa., for defendants.

## CIVIL ACTION

BECHTLE, District Judge.

## MEMORANDUM AND ORDER

Defendants Ford Motor Company (hereinafter "Ford"), Ford Motor Credit Company, Wenner Ford Tractor, Inc., John S. Wenner, John Watson, Douglas N. Crawford, Eugene W. Fraher, E.S. Hasel, Hugh Nickel and Kenneth E. Harris move for summary judgment pursuant to Fed.R.Civ. P. 56(b) to dismiss plaintiffs' complaint which alleges violations of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1982), for termination of plaintiffs' Ford dealership. For the reasons stated herein, defendants' motion is denied.

## I. BACKGROUND

This matter is before the district court on remand from the United States Court of Appeals for the Third Circuit. On May 7, 1984, this court granted defendants' motion for summary judgment to dismiss plaintiffs' antitrust claim for failure to present sufficient evidence concerning plaintiffs' conspiratorial conduct—an element of plaintiffs' *prima facie* case under § 1 of the Sherman Act. *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 587 F.Supp. 267 (E.D.Pa. 1984). On appeal, the Third Circuit reversed and remanded the case for trial holding that plaintiffs' evidence presented a genuine issue of material fact as to the conspiracy charge. *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 763 F.2d 1482 (3d Cir. 1985) (hereinafter *"Tunis Bros. I"*). The United States Supreme Court granted defendants' petition for certiorari and vacated the judgment, remanding for further consideration in light of its decision in *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) which reevaluated the standard for summary judgment in antitrust cases.

On remand, the Third Circuit reaffirmed its decision in *Tunis Bros. I* holding that the Supreme Court's decision in *Matsushita* did not require a new result and remanded for "trial on all counts." *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 823 F.2d 49, 50 (3d Cir.1987) (hereinafter *"Tunis Bros. II"*). Defendants' subsequent petition for certiorari was denied. *Ford Motor Co. v. Tunis Bros. Co., Inc.*, —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 979 (1988). Defendants, once again, move for summary judgment stating that plaintiffs have failed to offer sufficient evidence on adverse impact on competition—a second element in plaintiffs' *prima facie* case.

## II. DISCUSSION

### A. *Summary Judgment Standards*

Rule 56(c) instructs a district court to enter summary judgment where the record reveals no genuine issue of material fact and the evidence entitles the movant to judgment as a matter of law. In petitioning for summary judgment, the moving party bears the burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Following such a showing, the burden shifts to the nonmoving party to present affirmative evidence from which a jury might reasonably return a verdict in his favor. *Id.* at 323, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). In making its ruling, the court must draw all inferences in favor of the nonmoving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and all allegations of the nonmoving party which conflict with those of the movant must be taken as true. *Anderson, supra,* 477 U.S. at 253, 106 S.Ct. at 2513–14. Where a factual disagreement exists, a trial is necessary to resolve the conflict. *Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners,* 676 F.2d 81, 84 (3d Cir.1982).

### B. *The Sherman Act and Anticompetitive Effects*

The basic principles which guide this court in determining whether a violation of § 1 of the Sherman Act has occurred have been articulated by the Third Circuit:

> In order to sustain a cause of action under § 1 of the Sherman Act, the plaintiff must prove: (1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiff was injured as a proximate result of that conspiracy.

*Martin B. Glauser Dodge Co. v. Chrysler Corp.,* 570 F.2d 72, 81–82 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978) (citations omitted). Since the Third Circuit's decision in *Tunis Bros. II* requires trial on the conspiracy issue, plaintiffs' first requirement is met for purposes of summary judgment.

Defendants now move for summary judgment on the second issue, claiming that plaintiffs have failed to show the requisite adverse effects on competition in the market for tractors in Kennett Square, Pennsylvania. The Third Circuit's decision in *Martin B. Glauser Dodge Co. v. Chrysler Corp., supra,* provides the applicable standard:

> Unless the particular restraint falls within a category that has been judicially determined to be illegal *per se,* the legality of a restraint challenged under § 1 of the Sherman Act must be assessed under the rule of reason standard, only those restraints upon interstate commerce which are unreasonable are proscribed by § 1 of the Sherman Act.

570 F.2d at 82.

### 1. *Application of the Per Se Doctrine*

Plaintiffs allege that Ford's 79% stock ownership of Wenner Ford cast it in the role of a "dual distributor" which competed directly against plaintiff Tunis Brothers for the sale of tractors in Kennett Square. The Complaint further alleges that Ford's refusal to consent to the transfer of the Tunis Brothers franchise to new owners, its refusal to approve the application of plaintiffs de la Rigaudiere and Smith for a franchise in Kennett Square and its termination of the Tunis Brothers franchise were pursuant to a horizontal conspiracy to allocate territories giving rise to *per se* liability. *See United States v. Topco Assoc. Inc.,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972) (horizontal division of territories is *per se* illegal under Sherman Act). In support of this proposition, plain-

tiffs point to the Third Circuit's opinion in *Tunis Bros. I* which acknowledged the "*horizontal* conflict present in this case ... between the subgoals of the two distributors, Wenner Ford and Tunis Brothers." 763 F.2d at 1497, n. 23 [emphasis in original]. That court went on to describe the conflict as follows:

> In those situations where the termination of a distributor has allegedly occurred due to a conspiracy between the supplier and one or more of its distributors, the courts have been uncertain as to whether to apply the "rule of reason" or the *per se* rule because, such cases have both horizontal and vertical elements. If purely a horizontal restraint, it would be subject to scrutiny under the Sherman Act as illegal *per se, see, e.g., United States v. General Motors Corp.,* 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966) (concerted refusal to deal), whereas if truly vertical, it could only be subject to the "rule of reason." *See Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).

763 F.2d at 1497, n. 24.

In addition to this language, plaintiffs cite to several decisions of the Third Circuit which apply *per se* analysis to seemingly vertical restraints having distinct effects in the horizontal market. *See, e.g., Cernuto, Inc. v. United Cabinet Corp.,* 595 F.2d 164 (3d Cir.1979); *American Motor Inns, Inc. v. Holiday Inns, Inc.,* 521 F.2d 1230 (3d Cir.1975). In *American Motor Inns,* the Third Circuit applied the *per se* rule to Holiday Inn, the nation's largest motel chain, which was simultaneously licensing its trademark to independent franchisees and operating its own motels. Moreover, Holiday Inn refused to franchise motels in cities in which its own Holiday Inns were located and included in its franchise agreements a clause that prohibited franchisees from owning or operating any motel in the Holiday Inn areas. The court held that this combination constituted a horizontal market allocation and therefore a *per se* violation of the Sherman Act. "[S]ince [Holiday Inn], in one of its capacities, was dealing on the same market level as its franchisees, its contracts that, in effect, foreclosed such franchisees from operating either Holiday Inns or non-Holiday Inns in cities where [Holiday Inn] operated an inn, except with [Holiday Inn's] permission, constitute market allocation agreements among competitors." 521 F.2d at 1254.

Likewise in *Cernuto, Inc. v. United Cabinet Corp., supra,* the Third Circuit applied the *per se* rule to an ostensibly vertical relationship between a cabinet manufacturer and distributor. In *Cernuto,* the court reversed a grant of summary judgment in favor of defendant and held that the termination of a discounter at the behest of a competing distributor amounted to a *per se* violation of the Sherman Act. In language adopted by the Third Circuit in *Tunis Bros. I, supra,* 763 F.2d at 1497, Judge Adams noted:

> [I]f the action of a manufacturer or other supplier is taken at the direction of its customer, the restraint becomes primarily horizontal in nature in that one customer is seeking to suppress its competition by utilizing the power of a common supplier. Therefore although the termination in such a situation is, itself, a vertical restraint, the desired impact is horizontal and on the dealer level.

595 F.2d at 168.

Defendants challenge application of the *per se* rule in this case and question the authority of *Cernuto* and *American Motor Inns* in light of the Supreme Court's recent decision in *Business Elec. Corp. v. Sharp Elec. Corp.,* — U.S. —, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988), which greatly limits application of the *per se* rule to dealer termination suits. The *Sharp Electronics* court noted several procompetitive reasons for terminating a price-cutting dealer, including "free-rider" problems, and held that "a vertical restraint is not illegal *per se* unless it includes some agreement on price or price levels." 108 S.Ct. at 1525. In a footnote to his opinion for the Court, Justice Scalia observed:

> The dissent apparently believes that whether a restraint is horizontal depends upon whether its anticompetitive effects are horizontal, and not upon whether it is

the product of a horizontal agreement.... That is of course a conceivable way of talking, but if it were the language of antitrust analysis there would be no such thing as an unlawful vertical restraint, since all anticompetitive effects are by definition horizontal effects....

\*   \*   \*   \*   \*   \*

[A] restraint is horizontal not because it has horizontal *effects*, but because it is the product of a horizontal agreement. 108 S.Ct. at 1523, n. 4 (emphasis added). Defendants additionally point to several decisions within the Third Circuit which restrict *Cernuto* to its facts as a price-fixing case. *See, e.g., Edward J. Sweeney & Sons v. Texaco, Inc.,* 637 F.2d 105, 114–115 (3d Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981); *Philadelphia Fast Foods, Inc. v. Popeyes Famous Fried Chicken, Inc.,* 647 F.Supp. 216 (E.D.Pa.1986).

As these arguments indicate, the standard to be applied to Ford's status as a "dual distributor," operating at both the franchisor and franchisee level, is unsettled under present antitrust law. *See, generally,* 7 P. Areeda, Antitrust Law § 1457 (1986); 16A VonKalinowski, *Antitrust Law and Trade Regulation,* in BUSINESS ORGANIZATIONS, § 66.02(2), at 25–35 (1988); Baxter, *The Viability of Vertical Restraints Doctrine,* 75 Calif.L.Rev. 933, 938 (1987). Added to this uncertainty is the conflicting evidence on Ford's market share in the relatively oligopolistic market for tractors in the Kennett Square area. "*Per se* rules of illegality are appropriate only when they relate to conduct that is manifestly anticompetitive," *Continental T.V., Inc. v. GTE Sylvania,* 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557–58, 53 L.Ed.2d 568 (1977), and to which the courts have considerable experience in determining its impact. Consequently, given the present state of the record the court is, at this time, unable to determine as a matter of law the applicability of the *per se* doctrine to Ford's decision to terminate the Tunis Brothers' dealership and will reserve resolution of this issue for trial, retaining its inherent power to decide questions of law at all appropriate stages.

### 2. *The Rule of Reason Standard*

Defendants claim that application of the rule of reason standard to their purely vertical decision to terminate Tunis Brothers should result in an award of summary judgment in their favor. Defining the relevant market as the interbrand market for tractor sales in the Kennett Square area, defendants claim that their refusal to license the Tunis Brothers dealership after sale to de la Rigaudiere and Smith had no adverse effects upon competition. Rather, defendants allege that competition was enhanced since the new Tunis Brothers became a distributor of Allis–Chalmers tractors, a theretofor unrepresented manufacturer in Kennett Square.

Plaintiffs seek to rebut this argument by defining the relevant market as the intrabrand market for Ford tractors and point to an informal survey done by plaintiff Smith which attributes considerable market power to Ford (43%) in the Kennett Square tractor market. From this data, plaintiffs argue that the reduction in the intrabrand competition for Ford tractors outweighs any marginal increase in interbrand competition for tractors as a whole, especially since plaintiffs' dealership sold only three Allis–Chalmers tractors before entering bankruptcy.

The rule of reason requires a district court to focus its inquiry entirely on whether the restraint imposed promotes or inhibits competition. *See Chicago Bd. of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 243–44, 62 L.Ed. 683 (1918). In *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), the Supreme Court, in reversing the application of the *per se* rule to nonprice vertical restraints, noted that although "[v]ertical restrictions reduce intrabrand competition by limiting the number of sellers of a particular product competing for the business of a given group of buyers," 433 U.S. at 54, 97 S.Ct. at 2559, they simultaneously "promote interbrand competition by allowing the manufacturer

to achieve certain efficiencies in the distribution of his product." *Id. See also* Bork, *The Rule of Reason and the Per Se Concept: Price Fixing and Market Division,* (Pt II) 75 Yale L.J. 373 (1966). Thus, "the substitution of one competitor for another by means of unfair competition is not in itself a violation of the antitrust laws ... whether conduct aimed solely at a competitor violates the Sherman Act depends upon the effect it has on competition in the relevant market." *Industrial Investment Development Corp. v. Mitsui & Co.,* 671 F.2d 876, 890, n. 16 (5th Cir.1982), *vacated on other grounds,* 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983). *See also, Mid–South Grizzlies v. National Football League,* 720 F.2d 772 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); *Chronister v. Atlantic Richfield Co.,* 653 F.Supp. 1576 (M.D.Pa. 1987). The court's focus thus remains on whether the termination produced adverse competitive effects in the relevant market.

In *Sharp Electronics, supra,* 108 S.Ct. 1515 (1988), the Supreme Court reemphasized that the primary focus of the antitrust laws is interbrand competition, *id.* at 1521, and that "rules in [the vertical] area should be formulated with a view towards protecting the doctrine of *GTE Sylvania.* " *Id.* However, this does not mean that a dimunition in intrabrand competition in an oligopolistic market exercised by one with considerable market power may not result in a violation of the Sherman Act. *See GTE Sylvania, supra,* 433 U.S. at 52–54, 97 S.Ct. at 2558–59; Comanor, *Vertical Price-fixing, Vertical Market Restrictions, and the New Antitrust Policy,* 98 Harv.L.Rev. 983, 999–1000 (1985). At the summary judgment stage it merely requires plaintiff to produce affirmative evidence which produces a genuine issue of material fact as to the impact on competition. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 586–587, 106 S.Ct. at 1356–57. Both parties have submitted conflicting depositions, affidavits and economic data relevant to market definition and competitive impact. Consequently, the court is unable at this time to determine as a matter of law the effect on competition produced by the termination of the Tunis Brothers dealership. Defendants' motion for summary judgment will be denied and the parties shall proceed to trial.

## III. CONCLUSION

The present state of the record does not establish as a matter of law that defendant Ford Motor Company's refusal to consent to the transfer of the Tunis Brothers franchise, its refusal to approve the application of plaintiffs de la Rigaudiere and Smith for a Ford franchise in Kennett Square, Pennsylvania, and its termination of the Tunis Brothers franchise had no adverse effect on competition in the market for tractors in Kennett Square. Defendants' motion for summary judgment will therefore be denied.

An appropriate Order will be entered.